IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FREDRICK ANDERSON,

   Petitioner,      No. CIV S-10-1649 JAM CHS

  vs.

JAMES WALKER, Warden,

   Respondent.  __FINDINGS AND RECOMMENDATIONS__

_____/

## I.  INTRODUCTION

   Anderson, a state prisoner, proceeds pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  At issue are his 2007 convictions in the Sacramento County Superior Court, case number 06F02395, for which he is serving an aggregate sentence of 26 years and four months in state prison.

## II.  BACKGROUND

   During a 48-hour crime spree, Anderson and his co-defendants, David Bustamante and Christian Rangel, robbed multiple victims at three different locations.  Miguel Rangel, (Christian Rangel's brother) was additionally involved in one of the robberies; he pleaded no contest and his case was severed.  Christian Rangel was tried separately.  At the joint trial of Anderson and Bustamante, evidence was adduced as follows:

1

***March 16 Wu robbery***

At approximately 10:00 p.m. on March 16, 2006,[FN3] Ronald Wu went to use the Wells Fargo ATM located at Howe and University Avenue in Sacramento. As he stood in front of the machine, Wu heard someone approach and turned to see a gunman (later identified as Rangel's brother), pointing a gun at him. Rangel followed his brother to the ATM while Anderson (the driver) waited in the car. As Wu fumbled through his wallet, Rangel's brother said, "Get it now. I will shoot you. I will kill you now." Rangel said, "This guy is too slow. Shoot him now. We need to go." Rangel's brother then struck Wu in the back of his head. Wu finally managed to withdraw $200 from the ATM and handed it over to the robbers, along with his driver's license. Rangel's brother threatened to kill Wu and his family if he called the police or canceled the ATM card. Rangel and his brother then got into the car driven by Anderson, who was waiting for them in the parking lot, and drove off.

FN3. All further calendar references are to the year 2006.

Six days after the robbery, Sacramento City Police Detective Sheila Bergquist interviewed Anderson in jail. After waiving his *Miranda*[FN4] rights, Anderson stated that around 10:00 p.m. on March 16, he picked up two of his friends in his mother's 1991 gray Acura Legend and drove them to a Wells Fargo ATM on Howe and University Avenue. He saw both friends go up to a man using the ATM, knew that some "criminal activity" had occurred, and drove away with them. Anderson identified Rangel and his brother from surveillance photos as the friends he had picked up.

FN4. *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694].

***[March 17] St. Patrick's Day robbery***

The night after the Wu robbery, March 17 at around 11:00 p.m., Pete Timm, Matthew Gray, Jonathan Flores, and Cory Thomas drove to a Wells Fargo ATM machine near the intersection of Howe and Fair Oaks. Timm and Gray went up to the ATM, while Flores and Thomas stayed in the car. While using the machine, Timm noticed three males walk up behind him, two of whom were later identified as Bustamante and Rangel. After Timm and Gray had both used the ATM machine, they began to walk back to Flores's car. Before they could get in the car, Rangel pulled out a gun and pointed it at Timm's chest, saying, "Give me your shit." He also held the gun to the heads of Flores and Thomas, threatening to kill Thomas. All the victims handed over their wallets and cash. The robbers escaped in a gray Acura Legend with paper-covered dealer license plates.

2

Sacramento County Sheriff's Deputies Matthew Burton and Duncan Brown responded to a 911 call about the robbery and interviewed the victims.

**March 18 house robbery**

A few hours later, at approximately 1:00 a.m., three males, later identified as Anderson, Bustamante, and Rangel, and a female arrived uninvited to a party at David Fink's house. Bustamante grabbed Fink's laptop computer and cords from the living room, and tried to punch Fink when Fink confronted him. Rangel pulled out a gun and pointed it at Fink and other party guests. Bustamante and Anderson grabbed two Samurai swords from a display mantle as the group left the house. Fink called the police, who arrived around 2:00 a.m. to take a report.

**Apprehension of the robbers**

Around 4:00 a.m. that morning (March 18), Deputy Brown stopped a gray Acura Legend with paper-covered license plates that matched the description of the car given to him by the victims of the St. Patrick's Day robbery. Anderson was driving the car with Bustamante, Rangel, and a female as passengers. After determining that Anderson was on probation, the deputy conducted a search of the car and found a laptop computer, two Samurai swords in sheaths, and an empty wallet, identified later as some of the items stolen from victim Fink's house a few hours earlier. The deputy also found cash in Anderson's possession that was similar in denominations to the money Thomas reported giving to the robbers on March 17.

*People v. Anderson*, No. 2623972, 2008 WL 2623973, at 1 -2 (Cal. App. 3rd Dist. 2008).

On this evidence, a jury convicted Anderson of four counts of first degree robbery and two counts of second degree robbery. The trial court sentenced him to an aggregate state prison term of 26 years and four months.

Anderson appealed his convictions to the California Court of Appeal, Third District, where judgment was affirmed in an unpublished opinion. Petition for review to the California Supreme Court was denied. Anderson filed multiple state habeas corpus petitions which were likewise denied. The parties agree that Anderson exhausted state remedies with respect to grounds one through six; respondent asserts, however, that ground seven is unexhausted and therefore barred in this court. Respondent additionally asserts that ground four

1   is procedurally barred for Anderson's failure to object to the alleged constitutional violation at

2   trial.

### III.  GROUNDS FOR RELIEF

4       Anderson claims:

5   A.    Insufficient evidence supported his conviction for the Wu robbery under a theory
    of aiding and abetting;

6   B.    Insufficient evidence supported conviction for the St. Patrick's day robbery;

7   C.    The trial court erred in instructing with CALCRIM No. 1603;

8   D.    The prosecutor committed prejudicial misconduct;

9   E.    The trial court erred in imposing consecutive sentences based on facts not found
10       true by a jury beyond a reasonable doubt;

11   F.    Both trial and appellate counsel rendered ineffective assistance; and

12   G.    The trial court erred in declining to instruct the jury with proposed Defense
    Special Instruction No. 1.

13

14       For the reasons that follow, the grounds are without merit and relief should be

15   denied.

### IV.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

17       An application for writ of habeas corpus by a person in custody under judgment of

18   a state court can be granted only for violations of the Constitution or laws of the United States.

19   28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v.*

20   *Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)).

21   This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to,

22   the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Lindh v. Murphy*, 521

23   U.S. 320, 326 (1997); see also *Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999).  Under the

24   AEDPA, federal habeas corpus relief is also precluded for any claim decided on the merits in

25   state court proceedings unless the state court's adjudication of the claim:

26   /////

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

This court looks to the last reasoned state court decision to determine whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002), cert. dismissed, 538 U.S. 919.  The state court's factual findings are presumed correct if not rebutted with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Taylor v. Maddox*, 336 F.3d 992, 1000 (9th Cir. 2004).  It is the habeas corpus petitioner's burden to show the state court's decision was either contrary to or an unreasonable application of federal law.  *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).

## V.  DISCUSSION

### A.      Sufficiency of the Evidence- Wu Robbery

Anderson claims there was insufficient evidence that he aided and abetted the March 16 robbery of Ronald Wu.  He points out that he did not appear in any of the surveillance photographs, that he was not identified by Wu as having been present at the scene of the crime, and that Wu did not accurately describe the car he was subsequently stopped driving.

The Due Process Clause of the Fourteenth Amendment protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.  *In re Winship*, 397 U.S. 358, 364 (1970).  On habeas corpus review, sufficient evidence supports a conviction so long as, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S.

5

307, 319 (1979); s*ee also Prantil v. California*, 843 F.2d 314, 316 (9th Cir. 1988) (per curiam).

The *Jackson* standard is applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Davis v. Woodford*, 384 F.3d 628, 639 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 319.)  The dispositive question is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Chein v. Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 318).  Under the AEDPA, this standard is applied with an additional layer of deference.  *Juan H. v. Allen*, 408 F.3d 1262, 1274-75 (9th Cir. 2005).  This court must ask "whether the decision of the California Court of Appeal reflected an 'unreasonable application of' *Jackson* and *Winship* to the facts of this case."  *Id*. (citing 28 U.S.C. § 2254(d)(1)).

In California, "[r]obbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."  Cal. Penal Code § 211.  To prove commission of this crime on an aiding and abetting theory of liability, the prosecution must prove that the defendant, acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of a predicate or target offense; (3) by act or advice aided, promoted, encouraged or instigated the commission of the target crime. *People v. Beeman*, 35 Cal.3d 547, 561 (1984).  Aider and abettor liability is established if the getaway driver forms "the intent to facilitate or encourage commission of the robbery prior to or during the carrying away of the loot to a place of temporary safety."  *People v. Cooper*, 53 Cal.3d 1158, 1165 (1991) (italics and footnote omitted).  Intent to aid and abet may be inferred from a defendant's presence at the scene of the crime, his failure to take steps to prevent the commission of the crime, his companionship with the perpetrator(s), and his conduct before, during, and after the crime. *People v. Jones*, 108 Cal.App.3d 9, 15 (1980); *People v. Eskew*, 206 Cal.App.2d 205, 206-07 (1962).  The jury was instructed on these elements, and also as to prosecution's reasonable doubt burden of proof.  (Reporter's Transcript ("RT") at 1277-78, 1288-94.)

As he did in state court, Anderson cites in support of this claim *Opper v. United States*, 348 U.S. 84, 89 (1954), *Smith v. United States*, 348 U.S. 147 (1954), and *United States v. Lopez-Alvarez*, 970 F.2d 583, 589-93 (9th Cir. 1992), among other authorities, for the proposition that his admissions to Detective Bergquist were insufficient to prove his guilt because they were not sufficiently corroborated.  Considering this claim on direct appeal, the California Court of Appeal held in the last reasoned state court decision:

> The federal cases that Anderson cites are inapposite as they pertain to the *admissibility* of a defendant[']s extrajudicial statement or confession, not the sufficiency of the evidence to support a conviction. However, Anderson is not claiming that the trial court erred in *admitting* his statement. His argument is that the statement, even supplemented by the other evidence in the record, is not sufficient to sustain his conviction.
>
> [....]
>
> Here, Anderson's admission to Detective Bergquist that he drove his "friends" Rangel and his brother to the bank in his mother's Acura Legend placed him at the scene of the Wu robbery as the driver of the getaway car. The next day Anderson and Rangel, two of the identified perpetrators of the Wu robbery, along with Bustamante and a female, were stopped driving a similar Acura Legend containing loot stolen from two subsequent robberies.
>
> The jury could find from this evidence that, contrary to Anderson's denial of criminal intent, he was in league with the other robbers throughout the crime spree, and in fact willingly served as the getaway driver during the Wu robbery. Anderson's claim of insufficient evidence must be rejected.

*People v. Anderson*, *supra*, 2008 WL 2623972, at 3.

As the state court held, the federal authorities cited by Anderson do not advance his sufficiency of the evidence claim.  In addition, viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Although Wu identified only Rangel as the gunman in a photographic lineup, Anderson's own admissions placed him at the scene as the getaway driver and his intent to aid and abet could be reasonably inferred from that presence, his conduct before, during, and after

7

1   the crime including his apparent failure to take steps to prevent the commission of the crime, and

2   his companionship with Rangel, the perpetrator identified by Wu.  That Wu described a "dirty

3   white" vehicle leaving the scene of the crime (RT at 231), while Anderson was later stopped

4   driving a dark gray Acura Legend, is of no moment.  The state court's decision that sufficient

5   evidence supported the verdict was a reasonable application of the *Jackson/Winship* standards.

6            B.     Sufficiency of the Evidence- St. Patrick's Day Robbery

7         Anderson also claims insufficient evidence showed that he participated in the St.

8   Patrick's Day robbery against victims Timm, Gray, Flores, and Thomas.  In particular, he argues

9   the only evidence against him was his presence in the car several hours after the robbery and the

10   similarity of the denominations of the stolen cash to the money that found on his person.  The

11   California Court of Appeal rejected this claim:

12          Although he was not identified by any of the victims, there is
             substantial evidence that Anderson participated in the robbery. The

13          victims testified that the robbers drove away from the scene in a
             dark Acura Legend with paper over its license plates. Anderson

14          was stopped driving a car that matched that exact description just
             hours after the robbery, along with Rangel and Bustamante, whom

15          the victims positively identified as the robbers. Anderson[']s height
             and build also matched the victim[']s description of the third male

16          involved in the robbery. Finally, Anderson was found in possession
             of currency remarkably similar in denominations to the cash

17          Thomas had given the robbers. Thomas told police he gave the
             robbers four $20 bills, one $10 bill, one $5 bill, and five $1 bills.

18          Anderson was apprehended several hours later carrying *two* $20
             bills, one $10 bill, one $5 bill, and five $1 bills.

19

20          Based on the foregoing, we find substantial evidence to support
             Anderson's convictions for the ATM robbery of March 17.

21   *People v. Anderson*, *supra*, 2008 WL 2623972, at 3-4.

22         One of the victims in the St. Patrick's Day robbery (Timm) positively identified

23   Rangel and Bustamante as two of the perpetrators.  As the state court set forth, Timm was unable

24   to positively identify Anderson as the third suspect, but did recognize him as having the same

25   height and build as the third perpetrator.  (RT at 441.)  Anderson's car also matched each of these

26   victims' descriptions.  (RT at 359-61, 676, 757.)  Considering in addition the similarity of

denominations of cash found in Anderson's possession just a few hours later (RT at 691-92), the state court's determination that sufficient evidence supported his conviction on this count was a reasonable application of the *Jackson/Winship* standard.

C.     Instruction with CALCRIM No. 1603

The jury was instructed with CALCRIM No. 1603 as follows:

> To be guilty of robbery as an aider and abetter, the defendant must have formed the intent to aid and abet the commission of the robbery before or while a perpetrator carried away the property to a place of temporary safety.
>
> A perpetrator has reached a place of temporary safety with the property if he has successfully escaped from the scene, is no longer being pursued, and has unchallenged possession of the property.

(RT at 1293.)  Anderson claims the instruction erroneously focused on reaching a "place of temporary safety" as a successful escape, because the evidence showed his participation was limited to driving the actual perpetrators away from the bank, a theory he asserts has been rejected by the California Supreme Court as proving liability as a principle or accomplice.

On appeal, the state court agreed that the trial court had erred under state law but concluded that the error was harmless and could not have contributed to the jury's finding of accomplice liability in Anderson's case:

> In *People v. Cooper* (1991) 53 Cal.3d 1158, 282 Cal.Rptr. 450, 811 P.2d 742 (*Cooper*), the California Supreme Court held that "[f]or purposes of determining liability as an aider and abettor, the commission of a robbery continues so long as the loot is being carried away to a place of temporary safety." The court declined to adopt the "escape rule" for purposes of determining accomplice liability, reasoning that an instruction referring to "escape" could mislead the jury into believing that a getaway driver could be guilty as an accomplice for helping the perpetrators escape to a place of temporary safety *even if the loot was not being carried away during the escape.* Such a notion would "eliminate the distinction between aider and abettor liability and accessory [after the fact] liability in the context of getaway drivers in a manner both contrary to statute, and out of step with reasonable concepts of culpability...."

/////

9

1    Under the reasoning of *Cooper,* the "escape" language in
     CALCRIM No. 1603 was improper insofar as it may have led the
2    jury to believe that a defendant could be found guilty as an
     accomplice by helping the perpetrators escape the scene, even if
3    the loot was not being carried away during the escape.

4    However, an instructional error that improperly describes an
     element of an offense does not require reversal if the court finds it
5    was harmless beyond a reasonable doubt. (*Chapman v. California*
     (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711]; *People v.*
6    *Flood* (1998) 18 Cal.4th 470, 503, 76 Cal.Rptr.2d 180, 957 P.2d
     869.)
7
     The error here was harmless beyond a reasonable doubt because
8    there was no evidence that the carrying away of Wu's property did
     not coincide with the robbers' escape.
9
     The evidence at trial established that the escape and carrying away
10   of the loot occurred at the same time. Thus, "if the jury found that
     [a] defendant formed the intent to facilitate or encourage
11   commission of the robbery prior to or during the escape to a place
     of temporary safety, then such intent was also necessarily formed
12   prior to ... [reaching] a place of temporary safety."

13   For the foregoing reasons, the wayward language in CALCRIM
     No. 1603 could not have contributed to the jury's finding of
14   accomplice liability and any error was certainly harmless.

15   *People v. Anderson*, 2008 WL 2623972, at 4-5 (citations omitted).

16          A claim of instructional error does not raise a cognizable federal claim unless the

17   error, considered in context of all the instructions and the trial record as a whole, "so infected the

18   entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62,

19   71-72 (1991); *Henderson v. Kibbe,* 431 U.S. 145, 152-55, n.10 (1977); *Cupp v. Nauhten,* 414

20   U.S. 141, 146-47 (1973).  In addition, on federal habeas corpus review, no relief can be granted

21   without a showing that the instructional error had a "substantial and injurious effect or influence

22   in determining the jury's verdict." *Calderon v. Coleman*, 525 U.S. 141, 147 (1998) (citing

23   *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  Thus, in order to grant habeas corpus relief

24   where a state court has determined that a constitutional error was harmless, a reviewing court

25   must determine: (1) that the state court's decision was contrary to or an unreasonable application

26   of Supreme Court harmless error precedent, *and* (2) that the petitioner suffered prejudice under

                                          10

1   *Brecht* from the constitutional error.  *Inthavong v. LaMarque*, 420 F.3d 1055, 1059 (9th Cir.

2   2005).

3           Here, for the reasons set forth by the state court, there is no reasonable likelihood

4   that the challenged portion of the instruction affected the verdict.  The evidence adduced at trial

5   did not permit the jury to find Anderson guilty based on a theory that he helped the perpetrators

6   escape the scene *without* the stolen money.  Because it is clear that the error of state law

7   recognized by the court of appeal did not substantially and injuriously affect or influence the

8   jury's verdict, no relief is available.  *See Brecht*, 507 U.S. at 638; *Hart v. Stagner*, 935 F.2d 1007,

9   1012-13 (9th Cir. 1991) (defective instruction on aiding and abetting which allowed jury to infer

10  intent and relieved prosecution of burden of proving mens rea of charged crime was harmless

11  where facts did not permit a rational conclusion that defendant did not have the requisite intent).

12          D.      Prosecutorial Misconduct

13          Anderson claims the prosecutor committed prejudicial misconduct by vouching

14  for a key prosecution witness during rebuttal argument.  Presented with this claim on direct

15  appeal, the state court held that the issue was forfeited for defense counsel's failure to object in

16  the trial court.  Respondent asserts this claim is procedurally barred because its rejection in state

17  court was based on application of California's contemporaneous objection rule, an independent

18  and adequate state procedural bar.

19          As a general rule, a federal habeas court "will not review a question of federal law

20  decided by a state court if the decision of that court rests on a state law ground that is

21  independent of the federal question and adequate to support the judgment."  *Calderon v. United*

22  *States District Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting *Coleman v. Thompson*,

23  501 U.S. 722, 729 (1991)).  For a state procedural rule to be independent, the state law basis for

24  the decision must not be interwoven with federal law.  *LaCrosse v. Kernan,* 244 F.3d 702, 704

25  (9th Cir. 2001).  To be deemed adequate, it must be well established and consistently applied.

26  *Poland v. Stewart*, 169 F.3d 575, 577 (9th Cir. 1999).  An exception to the general rule exists if

1   the prisoner can demonstrate either cause for the default and actual prejudice as a result of the

2   alleged violation of federal law, or that failure to consider the claims will result in a fundamental

3   miscarriage of justice. *Coleman*, 501 U.S. at 750.

4           Once the state has pleaded the existence of an independent and adequate state

5   procedural ground as an affirmative defense, the burden shifts to petitioner to place the adequacy

6   of that procedural rule in issue, as "the scope of the state's burden of proof thereafter will be

7   measured by the specific claims of inadequacy put forth by the petitioner." *Bennett v. Mueller*,

8   322 F.3d 573, 585-86 (9th Cir. 2003). If placed in issue, the state retains the ultimate burden of

9   proving adequacy of the asserted bar. *Id*. at 585-86.

10           Here, Anderson has offered no argument that the contemporaneous objection rule

11   invoked by the state court was not an independent and adequate basis for its decision, nor has he

12   demonstrated cause for his default or that a miscarriage of justice would result if his claim is not

13   heard. Accordingly, review of his claim regarding the prosecutor's alleged misconduct during

14   argument should be found to be barred. *See generally King v. Lamarque*, 464 F.3d 963, 967

15   (9th Cir. 2006) ("*Bennett* requires the petitioner to 'place [the procedural default] defense in

16   issue" to shift the burden back to the government"). It is noted that the Ninth Circuit has held

17   California's contemporaneous objection rule to be independent and adequate on various

18   occasions, affirming the denial of a federal petition on grounds of procedural default where there

19   was a failure to object to at trial. *E.g.*, *Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th Cir.

20   2005); *Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004) (jury instruction claim

21   procedurally barred for failure to object); *Melendez v. Pliler*, 288 F.3d 1120, 1125 (9th Cir. 2002)

22   (citing *Garrison v. McCarthy*, 653 F.2d 374, 377 (9th Cir. 1981); *Vansickel v. White*, 166 F.3d

23   953, 957 (9th Cir. 1999); *Rich v. Calderon*, 187 F.3d 1064, 1069-70 (9th Cir. 1999) (declining to

24   review various prosecutorial misconduct claims as procedurally barred for failure to

25   contemporaneously object).

26   /////

In any event, this claim would fail on the merits even if it were not procedurally barred.  At issue is the following portion of the prosecutor's rebuttal argument to the jury:

> And also with respect to the argument defense made that maybe the defendant didn't say what [Detective Bergquist]'s saying that he said, he's – didn't come right out and say it, but he's implying, and he's saying that Detective Bergquist is a liar and she got up on the stand and she told you something that the defendant didn't really say.
>
> She wouldn't lie.  She doesn't lie.  She's doing her job.  She's telling you what he said to her.  He said he thought something criminal had happened and so he drove his friends out of there.  And in doing so, he was aiding and abetting the robbery.

(RT at 1259-60.)

Considering the merits of the prosecutorial misconduct claim in an alternative holding to the procedural bar, the state court held:[1]

> [T]here was no misconduct. Although "[a] prosecutor is prohibited from vouching for the credibility of witnesses or otherwise bolstering the veracity of their testimony by referring to evidence outside the record," or to place the prestige of her office behind a witness by offering the impression that she has taken steps to assure a witness's truthfulness at trial, nothing of the sort happened here. In response to defense counsel's suggestion that Detective Bergquist perjured herself, the prosecutor asserted that she had no motive to lie because she was simply doing her job. The remarks fell within the realm of fair argument.

*People v. Anderson*, 2008 WL 2623972, at 6 (internal citations omitted).

The appropriate standard for a federal court reviewing a claim of prosecutorial misconduct on habeas corpus is the narrow one of whether the conduct violated due process.  *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  "The relevant question is whether the prosecutor's error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *see also Smith v. Phillips*, 455 U.S. 209, 219 (1983) ("the touchstone of due

---

[1] The state court's *alternative* holding on the merits does not affect the independence or adequacy of the cited procedural bar.  *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989).

13

process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor"). A challenge to a portion of a closing argument is "examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error." *United States v. Young*, 470 U.S. 1, 12 (1985). Factors to be considered in determining whether habeas relief is warranted include whether the prosecutor manipulated or misstated the evidence; whether the conduct implicated other specific rights of the accused; whether the objectionable content was invited or provoked by defense counsel's argument; whether the trial court admonished the jurors; and the weight of the evidence against the defendant. *Darden*, 477 U.S. at 181-82. Relief is available only if the misconduct rendered the trial fundamentally unfair. *Id*. at 181.

"The government may not vouch for the credibility of its witnesses, either by putting its own prestige behind the witness, or by indicating that extrinsic information not presented in court supports the witness' testimony..." *United States v. Simtob*, 901 F.2d 799, 805 (9th Cir. 1990); *see also United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993). Improper vouching has been found, for example, where the prosecutor "plainly implied that she knew [a Federal agent] would be fired for committing perjury and that she believed no reasonable agent in his shoes would take such a risk." *United States v. Weatherspoon*, 410 F.3d 1142, 1146 (9th Cir. 2005); *see also United States v. Pungitore*, 910 F.2d 1084, 1124 (3rd Cir. 1990) (prosecutor's statement that federal agents would not have coached witnesses because they would have "jeopardized our jobs, our careers, our right to practice law, they're [*sic*] right to continue as FBI agents..." found improper).

Here, in contrast, the prosecutor did not express her own belief in the Bergquist's credibility or imply that any information not in evidence supported Bergquist's accounts or assured her credibility. Rather, in response to the defense's suggestion, the prosecutor stated that Bergquist had no motivation to lie. Such an argument was based upon inferences that could be reasonably drawn from evidence in the record (i.e., that Bergquist was a detective doing her job

with no motivation or reason to lie that was apparent from the evidence).  The prosecutor's

comment, taken in context of a response to the defense's argument, did not imply that she was

personally aware of the Bergquist's truthfulness.  The complained of portion of argument did not

constitute improper vouching.  *See United States v. Nash*, 115 F.3d 1431, 1439 (9th Cir. 1997)

(prosecutor's argument that government witnesses had no motive to lie was not improper

vouching as it did not reference extra-record facts and was not personal guarantee of witnesses'

veracity).

### E.    Imposition of Consecutive Sentences

The trial court sentenced Anderson to consecutive terms on counts one, three and

five, and to an additional consecutive term for the prior felony conviction enhancement.  Citing

*Cunningham v. California*, 549 U.S. 270 (2007) and *Blakely v. Washington*, 542 U.S. 296

(2004), Anderson claims consecutive sentencing in this manner violated his right to a jury trial

under the Sixth and Fourteenth Amendments because the consecutive sentences were imposed

based on findings made by the judge as opposed to the jury.  Presented with the same claim on

direct appeal, the state court disagreed, noting it was bound by the California Supreme Court's

ruling in *People v. Black*, 41 Cal.4th 799 (2007), that consecutive sentences do not implicate the

Sixth Amendment right to jury trial as discussed in *Blakely* and *Cunningham.  People v.

Anderson*, 2008 WL 2623972, at 8.

Subsequent to the California Supreme Court's decision in *Black*, the United States

Supreme Court conclusively held in *Oregon v. Ice*, 555 U.S. 160, 169-70 (2009), that the

Constitution does not prohibit judges, rather than juries, from finding facts upon which to impose

consecutive sentences.  Under this clearly established Supreme Court precedent, Anderson's

Sixth Amendment claim fails.

### F.    Ineffective Assistance of Counsel

Anderson claims both trial and appellate counsel rendered ineffective assistance.

To demonstrate a denial of the Sixth Amendment right to the effective assistance of counsel, a

petitioner must establish that counsel's performance fell below an objective standard of reasonableness, and that he suffered prejudice from the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 690 (1984). Deficient performance requires a showing that counsel's performance was "outside the wide range of professionally competent assistance." *Id*. at 687 & 697. Prejudice is found where there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. The *Strickland* test for ineffective assistance of counsel applies to trial counsel's performance as well as appellate counsel's performance. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citing *Smith v. Murray*, 477 U.S. 527, 535-36 (1986).

"Surmounting *Strickland's* high bar is never an easy task," and review under the AEDPA is doubly deferential. *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (citing *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)). The relevant question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard. *Harrington*, 131 S. Ct. at 788.

### 1.    Trial Counsel

Anderson claims trial counsel, John Jimenez, failed to object to "important issues" and failed to call witnesses because he was having trouble getting paid. In support of this claim, Anderson identifies a portion of his trial transcript in which Jimenez informed the court of a dispute between himself and the Conflict Criminal Defenders regarding some of his claimed fees. Reviewing this claim on state habeas corpus, the Sacramento County Superior court held in the last reasoned state court opinion that

> The colloquy does not support [Anderson]'s claim, however, as Mr. Jimenez did not indicate that the payment dispute was hindering his representation of [Anderson]. In fact, Mr. Jimenez stated that the dispute was not impairing his representation of [Anderson] and the court agreed. (RT 657-58 [Mr. Jimenez stating, "And I've advised my client that I'm in no way – that my representation of him and my advocacy and degree that I do that will not in any way be affected by" the fee dispute]; RT 659 [The Court stating, "I would state for the record that I have absolutely no

16

1   concerns about Mr. Anderson, I believe he has up till now been
    provided effective assistance of counsel, and I trust that you will
2   continue to vigorously defend him in a competent manner as you
    have been doing so far.") Moreover, [Anderson] fails to identify
3   what important issues Mr. Jimenez did not object to or what he
    failed to investigate (with one exception discussed below)....

4

5   *In re Frederick Anderson*, No. 09F04521, slip op. at 2 (Sup. Ct. Cal. August 13, 2009).

6          "Conclusory allegations which are not supported by a statement of specific facts

7   do not warrant habeas relief." *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994); *Boehme v.*

8   *Maxwell*, 423 F.2d 1056, 1058 (9th cir. 1970) ("[a]llegations of fact, rather than conclusions, are

9   required"). This portion of Anderson's ineffective assistance of counsel claim fails as he has not

10  alleged what witnesses counsel failed to call, what information counsel should have obtained

11  from those witnesses, or how the information would have changed the outcome of his trial. *See*

12  *United States v. Berry*, 814 F.2d 1406, 1409 (9th Cir. 1989).

13         Anderson also alleges Jimenez failed to object to the prosecutor's alleged

14  vouching for a key prosecution witness's credibility. As discussed in subsection D, *supra*, the

15  prosecutor's comment did not constitute prejudicial misconduct and accordingly, counsel did not

16  render deficient performance by failing to object. *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th

17  Cir. 1996) ("[T]he failure to take a futile action can never be deficient performance.") Nor is

18  prejudice shown; there is no reasonable probability that the result of the proceeding would have

19  been different had counsel objected, even if the objection were successful. *Strickland*, 466 U.S.

20  at 687-88.

21         Finally, Anderson contends Jimenez knew he wanted to testify in his own defense,

22  but failed to notify the trial court. On state habeas corpus, the Sacramento County Superior

23  Court rejected this claim for failure to state a prima facie case with regard to prejudice. *In re*

24  *Frederick Anderson*, No. 09F04521, slip op. at 3.

25         In support of this portion of his ineffective assistance claim, Anderson declares he

26  would have testified that Detective Bergquist did not read him his *Miranda* rights before

questioning him, and that he "never drove anyone to a ATM on the nite in question the day

before on and after St. Patrick's Day of 2006 [*sic*]."  With this proposed testimony, Anderson

fails to show the requisite prejudice.  As discussed elsewhere herein, the evidence at trial

included Anderson's detailed statement to Detective Bergquist that he drove his friends to the

Wells Fargo ATM on Howe Avenue in his mother's gray Acura Legend; Anderson also told

Bergquist he saw his friends near a man using the ATM and knew that some criminal activity had

occurred.  Anderson's friends, Bustamante and Rangel, were identified as the perpetrators of the

Wu robbery and the St. Patrick's Day robbery, while Anderson himself matched the height and

build of the third perpetrator.  This, together with the evidence regarding the gray Acura and the

cash denominations recovered from Anderson, renders his proposed trial testimony denying any

involvement unbelievable and incredible.  In sum, a reasonable argument exists that counsel's

alleged deficient performance in this regard did not cause prejudice.  The superior court's

rejection of this claim for lack of prejudice was not contrary to, or an unreasonable application of

clearly established federal law and no relief is available.

### 2.    Appellate Counsel

Anderson contends appellate counsel "overlooked" trial counsel's alleged

ineffective assistance based on not being paid for his legal services.  Because there is no

reasonable probability that such a claim would have been successful on appeal, appellate

counsel's failure to raise the issue does not constitute ineffective assistance.  *See Jones v. Smith*,

231 F.3d 1227, 1239 n. 8 (9th Cir. 2000).

### G.    Defense's Proposed Special Instruction

For his final ground, Anderson claims the trial court improperly refused to instruct

the jury with proposed Defense Special Instruction No. 1.

Respondent asserts this claim is barred for Anderson's failure to exhaust state

court remedies.  Before a claim may be properly brought on federal habeas corpus, it must first

be fairly presented to the highest court of the applicable state.  28 U.S.C. § 2254(b)(1).  In

California, that is the California Supreme Court.  *Castille v. Peoples*, 489 U.S. 346 (1989).  It is

Anderson's burden to show that he has exhausted his state court remedies.  *See Lambert v.*

*Blackwell*, 134 F.3d 506, 513 (3rd Cir. 1997), as amended 1998, cert. denied, 532 U.S. 919

(2001); *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997), cert. denied, 522 U.S. 833 (1997);

*Olson v. McKune*, 9 F.3d 95, 95 (10th Cir. 1993).  He has not done so with respect to this ground.

Anderson raised this claim to the state court of appeal on direct appeal but did not raise the issue

in his petition for review to the California Supreme Court and did not raise the issue in a state

petition for writ of habeas corpus to the California Supreme Court.

Nevertheless, it will be recommended that the claim be denied on its merits

because it is clearly not colorable.  *See* 28 U.S.C. § 2254(b)(2) ("[a]n application for a writ of

habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to

exhaust the remedies available in the courts of the State"); *Cassett v. Stewart*, 406 F.3d 614, 624

(9th Cir. 2005) (a federal court considering a habeas petition may deny an unexhausted claim on

the merits when it is perfectly clear that the claim is not "colorable").

Anderson's jury was instructed with CALCRIM No. 2.24 as follows:

> Before you may rely on circumstantial evidence to conclude that a
> fact necessary to find the defendant guilty has been proved, you
> must be convinced that the People have proved each fact essential
> to that conclusion beyond a reasonable doubt.
>
> Also, before you may rely on circumstantial evidence to find the
> defendant guilty, you must be convinced that the only reasonable
> conclusion supported by the circumstantial evidence is that the
> defendant is guilty.
>
> If you can draw two or more reasonable conclusions from the
> circumstantial evidence, and one of those reasonable conclusions
> points to innocence and the other to guilty, you must accept the one
> that points to innocence.  However, when considering
> circumstantial evidence, you must accept only the reasonable
> conclusion and rejected [*sic*] any that are unreasonable.

(RT at 1280.)  The defense proposed a special additional instruction which would have instructed

the jurors that if *all* the evidence in the case was equally susceptible of two interpretations, they

must adopt the one pointing to innocence; and that they were duty-bound to acquit the defendant

if an innocent explanation was reasonably consistent with all the facts and circumstances.  The

proposed instruction, if given, would have instructed:

> You are instructed that if from the evidence you can with equal propriety draw two conclusions, the one of guilt, the other of innocence, it is your duty to adopt the one of innocence and find the defendant not guilty. [¶] The law presumes the defendant to be innocent and the defendant is entitled to the benefit of this presumption at all stages of this proceeding. You must acquit the defendant if, after consideration of the evidence, it is consistent with any reasonable hypothesis of his innocence. [¶] *It is not your duty to look for some theory upon which to convict the defendant but on the contrary, it is your duty and the law requires you, if you can reasonably do so, to reconcile all the facts and circumstances that have been shown with the innocence of the defendant and acquit him.* [¶] If the evidence relating to any or all the circumstances in this case, is, *in view of all the evidence,* susceptible of two reasonable interpretations, one of which would point to the defendant's guilt and the other would admit of his innocence, then it is your duty in considering such evidence to adopt that interpretation which will admit of the defendant's innocence and reject that which would point to his guilt.

*People v. Anderson*, 2008 WL 2623972, at 5 (italics added by state court on appeal).

Anderson argues this instruction was necessary because CALCRIM No. 224 could

have led the jury to believe that those principles regarding interpretation of evidence were only

applicable to circumstantial evidence and not to direct evidence.

The state court rejected Anderson's claim of error:

> We reject the [ ] argument based on our decision in *People v. Anderson* (2007) 152 Cal.App.4th 919, 61 Cal.Rptr.3d 903. There, as here, the defendant "contend[ed] that because [CALCRIM No. 224] is limited to circumstantial evidence and sets forth basic reasonable doubt and burden of proof principles, it gives the false impression these principles apply only to circumstantial evidence, not direct evidence." We responded that "[d]efendant misreads the instruction. CALCRIM No. 224 does not set out basic reasonable doubt and burden of proof principles; these are described elsewhere. Although the instruction reiterates that each fact necessary for conviction must be proved beyond a reasonable doubt, the obvious purpose of the instruction is to limit the use of circumstantial evidence in establishing such proof. It cautions the jury not to rely on circumstantial evidence to find the defendant guilty unless the only reasonable conclusion to be drawn from it

20

points to the defendant's guilt. In other words, in determining whether a fact necessary for conviction has been proved beyond a reasonable doubt, circumstantial evidence may be relied on only if the only reasonable inference that may be drawn from it points to the defendant's guilt. [¶] The same limitation does not apply to direct evidence. Circumstantial evidence involves a two-step process: presentation of the evidence followed by a determination of what reasonable inference or inferences may be drawn from it. By contrast, direct evidence stands on its own. It is evidence that does not require an inference. Thus, as to direct evidence, there is no need to decide whether there is an opposing inference that suggests innocence."

[....]

The reasonable doubt standard and its application to all evidence, whether direct or circumstantial, was covered by CALCRIM Nos. 220, 222, and 224. As the italicized portions of defense Special Instruction No. 1 show (see fn. 6, *ante*), the proposed instruction improperly and unfairly skewed the standard instructions in a manner that would predispose the jury toward a defense verdict. Accordingly, the instruction was properly refused.

*People v. Anderson*, 2008 WL 2623972, at 5-6 (citations omitted).

In general, a claim of instructional error does not raise a cognizable federal claim unless the error, considered in context of all the instructions and the trial record as a whole, "so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991); *see also Henderson v. Kibbe,* 431 U.S. 145, 152-55, n.10 (1977); *Cupp v. Nauhten,* 414 U.S. 141, 146-47 (1973). On federal habeas corpus review, no relief can be granted without a showing that the instructional error had a "substantial and injurious effect or influence in determining the jury's verdict." *Calderon v. Coleman*, 525 U.S. 141, 147 (1998) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). An error such as an omitted instruction is less likely to be prejudicial than a misstatement of the law. *Kibbe*, 431 U.S. at 155; *Clark v. Brown*, 450 F.3d 898, 904 (9th cir. 2006).

Looking at the jury instructions as a whole and each in context of the other in this case, the reasonable doubt standard was clearly and accurately conveyed to the jury. (E.g., RT at 1277-78.) The trial court's rejection of the additional requested instruction in no way rendered

Anderson's trial fundamentally unfair.  *See Godinez*, 67 F.3d at 746 ("We ask whether, under the instructions as a whole and given the evidence in the case, the failure to give the requested instruction rendered the trial so fundamentally unfair as to violate due process.").  Rejection of this claim was not contrary to or an unreasonable application of clearly established federal law. No relief is available.

VI.  CONCLUSION

For the foregoing reasons, the petition should be denied.  Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons discussed, a substantial showing of the denial of a constitutional right has not been made in this case.

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  The petition for writ of habeas corpus be denied; and

2.  A certificate of appealability not issue.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time waives the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).  Any reply to the objections shall be filed and served within seven days after service of the objections.

DATED: November 7, 2011

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE